Maria C. Rodríguez, Esq. (SBN 194201)
Julie I. LaRoe, Esq. (SBN 229075)
SEYFARTH, SHAW LLP
One Century Plaza, Suite 3300
2029 Century Park East
Los Angeles, California 90067-3063
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Jeffrey L. Karlin, Esq. (SBN 144488)
Katherine L. Wallman, Esq. (SBN 235842)
GRAY, PLANT, MOOTY, MOOTY
 & BENNETT, P.A.
The Watergate
2600 Virginia Avenue, N.W., Suite 1111
Washington, D.C. 20037-1905
Telephone: (202) 295-2200
Facsimile: (202) 295-2250

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

BASKIN-ROBBINS FRANCHISED SHOPS LLC, a Delaware limited liability company, and BR IP HOLDER LLC, a Delaware limited liability company,

Plaintiffs,

vs.

JOHN WILLHALM, a resident of California,

Defendant.

Case No.: C07 05230

COMPLAINT

## INTRODUCTION

This is an action for breach of contract, trademark infringement, and unfair competition arising from the conduct of Defendant in the operation of his Baskin-Robbins store. Plaintiffs seek injunctive and other relief in connection with the termination of Defendant's franchise.

-1-
COMPLAINT
LA1 6659429.1

## THE PARTIES

1. Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins"), successor-in-interest to Baskin-Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Baskin-Robbins is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Baskin-Robbins has the exclusive license to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores. Unless otherwise specified, Baskin-Robbins and BR IP Holder LLC are collectively referred to hereinafter as "Baskin-Robbins."

3. Defendant John Willhalm, upon information and belief, is a natural person and a citizen and resident of the State of California. At all times relevant to this action, Mr. Willhalm was the owner and operator of a retail store located at 3591 Homestead Road, Santa Clara, California pursuant to a Franchise Agreement dated August 17, 2001. Defendant was licensed to use Baskin-Robbins'

1. trademarks and trade names only in accordance with the terms of the Franchise Agreement.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

6. This Court has in personam jurisdiction over Defendant because he is a resident and/or citizen of this District, he conducts business in this District, and/or a substantial part of the events giving rise to these claims occurred in this District.

## BACKGROUND FACTS – THE BASKIN-ROBBINS SYSTEM

7. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

8. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

9. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

10. The Baskin-Robbins trademarks are utilized in interstate commerce.

11. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

12. Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and 3,000 stores outside of the United States. In the more than fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

13. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

14. The goodwill and reputation associated with the Baskin-Robbins marks are impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Baskin-Robbins trademarks.

## THE FRANCHISE AGREEMENT

15. Defendant's Franchise Agreement requires Defendant to comply with Baskin-Robbins' standards for uniformity, customer service, and product quality:

> 5.1.1 FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR. All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand. FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

-4-
COMPLAINT

LA1 6659429.1

5.1.2 FRANCHISEE shall refrain from using or selling any products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment and methods of product storage, handling, preparation, packaging, merchandising, and delivery, or any other items of any kind, which do not meet FRANCHISOR's Standards . . . .

5.1.3 FRANCHISEE shall offer for sale all products that FRANCHISOR may, from time to time in its sole discretion, designate in writing as approved for sale at the Unit. FRANCHISEE shall sell, distribute and deliver such products only in weights, sizes, forms and packages as are approved in writing by FRANCHISOR. FRANCHISEE further agrees to discontinue offering for sale any product that FRANCHISOR may, at any later time, in its sole discretion, by written notice withdraw approval for sale at the Unit; and FRANCHISEE agrees to refrain from offering for sale any product or products which have not been designated in writing as approved by FRANCHISOR for sale at the Unit . . . .

5.1.4 FRANCHISEE shall maintain at all times a supply of approved products to meet the demand of FRANCHISEE's customers at the Unit.

5.1.5 FRANCHISEE shall purchase all food products, supplies, equipment and materials required for the operation of the Unit from FRANCHISOR or from suppliers who (a) demonstrate, to the reasonable satisfaction of FRANCHISOR, the ability to meet all of FRANCHISOR's Standards for such items, (b) possess adequate capacity and facilities to supply the needs of FRANCHISEE and other franchisees in the quantities, at the times and with the reliability requisite to an efficient operation, and (c) have been approved, in writing, by FRANCHISOR. Prior to purchasing any items from any supplier not previously approved by FRANCHISOR, FRANCHISEE shall submit to FRANCHISOR a written request for approval of the supplier . . .

LA1 6659429.1

16. Baskin-Robbins has an extensive inspection and quality assurance program to maintain uniformity and high standards in its franchised locations and to preserve the goodwill and reputation of its franchise system, as well as to protect the health and well-being of its customers.

17. Under Section 6.0 of the Franchise Agreement, Baskin-Robbins has the right to inspect Defendant's store in order to verify Defendant's compliance with the Franchise Agreement and Baskin-Robbins' standards.

18. Section 9.0.3 explicitly prohibits the palming off or substitution of products under the Baskin-Robbins marks.

19. The Franchise Agreement also requires Defendant not to do anything that harms Baskin-Robbins' goodwill:

> 8.0 During the term of this Agreement, including any extension or renewal thereof, and for a period of two (2) years after expiration or termination of this Agreement, regardless of the cause of termination (hereinafter called the "Post-Term Period"), neither FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall:
>
> 8.0.1 Divert or attempt to divert any business or customer of the Unit to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and Systems(s) . . . .

20. Pursuant to Sections 8.0.1 and 8.0.3 of the Franchise Agreement, Defendant agreed not to engage in business with a competitor:

> During the term of this Agreement, . . . neither FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be shall: . . . Except with respect to the ownership or operation of additional units under Franchises granted by FRANCHISOR, own, maintain, engage

-6-
COMPLAINT

LA1 6659429.1

in, be employed by, or have any interest in any other business which sells or offers to sell the same or substantially similar products to the type FRANCHISOR requires to be offered by FRANCHISEE at the Unit . . . .

21. In addition, pursuant to Section 5.0.2 of the Franchise Agreement, Defendant agreed "to operate the Unit in strict accordance with all of FRANCHISOR's Standards as they may be communicated to FRANCHISEE from time to time."

22. In the "Special Terms and Conditions Applicable to a Baskin-Robbins' Franchise" included as part of the Franchise Agreement, Defendant acknowledged and understood that "every detail of the Baskin-Robbins System is important to BASKIN-ROBBINS, to FRANCHISEE and to other Baskin-Robbins' franchisees, in order to develop and maintain high and uniform standards of quality, cleanliness, appearance, service, facilities, products and techniques to increase the demand for Baskin-Robbins Products and to protect and enhance the reputation and goodwill of BASKIN-ROBBINS." (Section BR-5.0.)

23. In addition, in the "Special Terms and Conditions Applicable to a Baskin-Robbins' Franchise" included as part of the Franchise Agreement, Defendant also acknowledged and agreed to "purchase from BASKIN-ROBBINS or its designee . . . all of the Baskin-Robbins Unit's requirements for the Baskin-Robbins Products specified by FRANCHISOR . . . ." (Section BR-5.1.5.1.)

24. Under the terms of the Franchise Agreement, Defendant agreed that he would use Plaintiffs' proprietary marks, including, but not limited to, their trademarks, logos, emblems, and other indicia of origin, "only in the manner and to the extent specifically licensed by" the Agreement. (Section 7.1.)

25. Defendant's Franchise Agreement also contains acknowledgments and agreements by Defendant concerning his continued use of Plaintiffs' marks and any methods associated with the name "Baskin-Robbins" after the termination

-7-
COMPLAINT

LAI 6659429.1

of the Franchise Agreement. Defendant agreed that any unauthorized or continued use of the marks after termination constitutes irreparable harm subject to injunctive relief. (Section 7.1.)

26. Defendant further agreed that, upon termination, he would comply with all post-termination obligations, including immediately ceasing to use Baskin-Robbins' trademarks and any methods associated with the Baskin-Robbins System. (Section 9.4.3.)

27. Under Section 9.4.7, in the event of termination of the Franchise Agreement, Baskin-Robbins has the express option to compel Defendant to "assign to FRANCHISOR any interest which FRANCHISEE has in the Lease or any other Agreement related to the Premises."

28. Under Sections 9.1.4 and 9.4 of the Franchise Agreement, no cure period is available if Defendant is in default under any section designated in 9.0.1 through 9.0.5 or if Defendant otherwise commits an act of fraud with respect to his obligations under the Franchise Agreement.

29. Additionally, Defendant agreed that he would pay Baskin-Robbins all damages with interest, costs and expenses, including reasonable attorneys' fees, incurred by reason of any default or termination of the Franchise Agreement. (Sections 9.3 & 9.4.1.)

**DEFENDANT'S DEFAULTS AND TERMINATION**

30. Defendant entered into and perpetuated a scheme to defraud Baskin-Robbins and the customers of the franchised business by substituting and palming off unapproved products in place of those specified by Baskin-Robbins, putting customers' health and Baskin-Robbins' goodwill and reputation at risk. Defendant entered into this scheme with the intent to substitute unapproved products for approved products and to palm off unapproved products to consumers as Baskin-Robbins' products.

-8-
COMPLAINT

LA1 6659429.1


31. For example, on more than one occasion Defendant has offered and sold for sale products that have not been expressly approved for sale by Baskin-Robbins. On or about September 27, 2007, a Baskin-Robbins franchisee attended an ice cream social event and observed Defendant supplying and serving non-Baskin-Robbins ice cream out of a Baskin-Robbins vendor cart. Defendant served the ice cream using Baskin-Robbins paper supplies and utensils. On or about September 28, 2007, a Baskin-Robbins representative visited Defendant's store and found that Defendant had six tubs of non-Baskin-Robbins ice cream in his walk-in freezer. Defendant purchased these products from an unapproved source.

32. The scheme was a fraud upon Baskin-Robbins, in breach of the Franchise Agreement. In addition, using and selling products that have not been approved for sale at Defendant's franchise and the palming off of products constitute breaches of the Franchise Agreement.

33. Based on the foregoing, and pursuant to applicable provisions of the Franchise Agreement, on October 4, 2007, Baskin-Robbins sent Defendant a Notice of Default and Termination, terminating the Franchise Agreement effective immediately upon Defendant's receipt of the Notice.

34. To date, Defendant has refused to accept termination and is continuing to operate the franchised business under the Baskin-Robbins trademarks.

## COUNT I

### Breach of Contract

35. The allegations set forth in paragraphs 1-34 above are hereby expressly incorporated by reference as if set forth fully herein.

36. The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreement cited herein.

LA1 6659429.1

1  37. Defendant's breaches of his Franchise Agreement constitute grounds
2  for terminating the Franchise Agreement.
3  38. As a direct and proximate result of these breaches, Plaintiffs have
4  suffered and are continuing to suffer irreparable injury, and have incurred
5  substantial losses, fees, and expenses in excess of $75,000.

## COUNT II

### Trademark Infringement

8  39. The allegations set forth in the paragraphs 1-38 above are hereby
9  expressly incorporated by reference as if set forth fully herein.
10  40. Defendant's use of Plaintiffs' trademarks and trade names outside the
11  scope of his Franchise Agreement is likely to confuse or deceive the public into
12  believing, contrary to fact, that the unauthorized activities of Defendant are
13  licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs.
14  Such continued use of Plaintiffs' trademarks and trade names infringes Plaintiffs'
15  exclusive rights in the trademarks under § 32 of the Lanham Act, 15 U.S.C.
16  § 1114.
17  41. Defendant's acts were done knowingly and intentionally to cause
18  confusion, or to cause mistake, or to deceive.
19  42. As a direct and proximate result of these actions, Plaintiffs have
20  suffered and are continuing to suffer irreparable injury, and have incurred and are
21  continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III

### Unfair Competition

24  43. The allegations set forth in paragraphs 1-42 above are hereby
25  expressly incorporated by reference as if set forth fully herein.
26  44. Defendant's use of Plaintiffs' trademarks and trade names outside the
27  scope of Defendant's Franchise Agreement is likely to cause confusion, or to

-10-
COMPLAINT

LA1 6659429.1

10/12/2007 10:34 4155030909 WORLDWIDE-ABC-SF PAGE 15/19
Case 5:07-cv-05230-RS    Document 1    Filed 10/12/2007    Page 11 of 12

1 cause mistake, or to deceive as to the origin, sponsorship, or approval of
2 Defendant's goods, services, or commercial activities. Such continued
3 unauthorized use of Plaintiffs' trademarks and trade names violates § 43 of the
4 Lanham Act, 15 U.S.C. § 1125(a).

5     45. Defendant's acts were done knowingly and intentionally to cause
6 confusion, or to cause mistake, or to deceive.

7     46. As a direct and proximate result of these actions, Plaintiffs have
8 suffered and are continuing to suffer irreparable injury, and have incurred and are
9 continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

11 WHEREFORE, Plaintiffs pray that this Court:

12     A. Enter an injunctive order ratifying and enforcing the termination of
13 the Franchise Agreement as of the effective date contained in the Notice of
14 Default and Termination, or as otherwise provided by applicable law;

15     B. Enter a judgment in favor of Plaintiffs for the damages incurred by
16 them as a result of the breaches of the Franchise Agreement by Defendant;

17     C. Enjoin Defendant and all those acting in concert with him from
18 infringing upon Plaintiffs' trademarks and trade names, and from otherwise
19 engaging in unfair competition with Plaintiffs;

20     D. Enter an injunctive order directing Defendant to comply with all of
21 his post-termination obligations as provided in the Franchise Agreement and any
22 existing lease option agreement and lease rider, including, but not limited to,
23 taking all steps required to transfer any leasehold interests in the store to Plaintiffs
24 or their designee, in the event that Plaintiffs elect to exercise any rights they or any
25 of their affiliates or subsidiaries might have in such interests;

26     E. Award Plaintiffs judgment against Defendant for the damages they
27 have sustained and the profits Defendant has derived as a result of his actions, and

28

-11-
COMPLAINT

LA1 6659429.1

1 that such damages be trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

F. Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

G. Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of Defendant's conduct;

H. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

I. Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

DATED: October 11, 2007

SEYFARTH SHAW LLP

By _____

Julie I. LaRoe
Attorneys for Plaintiffs
BASKIN-ROBBINS FRANCHISED SHOPS LLC and BR IP HOLDER LLC

LA1 6659429.1

-12-
COMPLAINT